IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

UNITED STATES OF AMERICA    *

      vs.    *   CRIMINAL NO. MJG-16-0263

VICTOR BRANDON MARIN    *

\*   \*   \*   \*   \*   \*   \*   \*   \*

<u>MEMORANDUM AND ORDER</u>

The Court has before it Defendant's Motion to Suppress [ECF No. 42], the Motion to Suppress Statements Admissions and Confessions [ECF No. 43][1], and the materials submitted relating thereto. The Court has held a hearing, which included the presentation of evidence and testimony by both sides.

Defendant has been indicted for conspiracy, bribery of public officials, and conspiracy to distribute and possess with the intent to distribute marijuana.

On June 9, 2015, Border Patrol Agents Herrera and Martinez were on duty on Highway 10 at the California and Arizona state borders, stopped on the side of the road near a well-lighted agricultural inspection area. They saw a black Lincoln MKZ driving toward their location headed eastbound, traveling faster than trucks traveling on the right lane of the highway. They

---

[1] At the hearing, Defendant Marin confirms he no longer contests the admissibility of the interview statements discussed in the Motion to Suppress Statements Admissions and Confessions [ECF No. 43].

observed the vehicle suddenly slow down and move to the side of a tractor-trailer in the right lane in a manner that could be considered as trying to pass the agents' vehicle without being observed. When the truck and the Lincoln passed the agents' location at the border of the two states, they observed the car speed up into Arizona, even though the speed limit was lower than it had been in California and they had entered into a speed restricted construction zone.

The agents followed the Lincoln and observed the passenger looking over his shoulder and watching the agents' car in a manner that led the agents to believe that he was concerned about being followed. The agents also observed the Lincoln driving unusually, repeatedly crossing over the "fog line" or side of the road in a manner that they found consistent with the actions of human smugglers transporting human cargo or contraband who looked for a clear place by the road to bail out of the car. While there was no direct indication of transportation of human cargo or contraband - for example, a weighted appearance to the car – the totality of the circumstances led them reasonably to believe that there was a legitimate basis to make an investigatory stop of the Lincoln. The agents conducted a traffic stop about five minutes after they began following the Lincoln.

After stopping the Lincoln, the Border Patrol agents spoke to the driver (Carson Small) and the passenger (Defendant Victor Marin). The agents were informed that they were not American citizens, that Defendant Marin did not have his required immigration documentation on him, and that there was no large amount of cash in the car. The agents radioed requests for the occupants' immigration statuses.

While the immigration status results were processing, the agents asked Defendant Marin if he would consent to a search of the car. Defendant asked: "Well I don't want to lie, I want to go, but is it my right to, can I say no?" Gov.'s Opp. at 4, ECF No. 50. He was advised that he could refuse, but that he was not free to leave because he did not have his required immigration documentation with him. The agents then repeated the request to search the car. Defendant looked over to Carson Small, who "shrugged his shoulders." Id. Then, "Defendant stated 'OK'." Id. During the search of the car, the agents found about $367,920 of United States currency.

Once the immigration status check was complete, the agents learned that Defendant Marin was a permanent United States resident whose conditions of residency had been violated by a 2009 conviction for marijuana possession. Defendant was taken into custody and transported to a Border Patrol Station where he

was interrogated after being given his Miranda warnings and consenting to speak. In the interview, Marin acknowledged that the cash in the car came from marijuana transaction proceeds, but did not confess that he had been engaged in the transactions.

Defendant Marin seeks to suppress all that resulted from the vehicle stop and search. Defendant argues that the search was done without probable cause, without a valid warrant, and based on an illegal stop. Def.'s Mot. ¶ 2, ECF No. 42.

To determine the legality of the investigatory vehicle stop, the Court conducts a reasonable suspicion determination. In doing so, the Court

> must look at the "totality of the circumstances" of each case to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing . . . . This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that "might well elude an untrained person" . . . . Although an officer's reliance on a mere "'hunch'" is insufficient to justify a stop . . . the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard.

United States v. Arvizu, 534 U.S. 266, 273-74 (2002) (internal citations omitted).  See also United States v. Bumpers, 705 F.3d 168, 175 (4th Cir. 2013) (explaining that actions that may be "susceptible of innocent explanation" when taken in isolation can combine to "form a particularized and objective basis" for a stop when considered together).

The Court finds that the observed circumstances, in light of the agents' experience, provided a reasonable suspicion that the vehicle and its occupants had been engaged in illegal wrongdoing warranting a vehicle stop.  While the individual actions that were observed might have been done in perfect innocence if considered in isolation, taken together there was enough to raise a reasonable suspicion warranting investigation through a traffic stop.  Hence, the Court will not declare the vehicle stop improper nor suppress evidence resulting therefrom.

The Defendant has also raised an argument that he did not consent to the search of the vehicle.  The Court finds that the Defendant voluntarily consented to the search.  However, even if there was no valid consent, the cash would have been discovered with a lawful inventory search after the agents had found that Defendant was in violation of his conditions of permanent

residency.  United States v. Bullette, 854 F.3d 261, 265 (4th Cir. 2017) ("The inevitable-discovery doctrine . . . allows the government to use information obtained from an otherwise unreasonable search if it can establish by a preponderance of the evidence that law enforcement would have 'ultimately or inevitably' discovered the evidence by 'lawful means.'").

\*   \*   \*

Accordingly, for the reasons stated in the record and in this Memorandum and Order:

1. The Motion To Suppress [ECF No. 42] is DENIED.

2. The Motion to Suppress Statements Admissions and Confessions [ECF No. 43] is DENIED.

SO ORDERED, this Tuesday, November 07, 2017.

/s/
Marvin J. Garbis
United States District Judge